UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6100-CR-FERGUSON/SNOW

UNITED STATES OF AMERICA   )
                           )
                           )
                           )
v.                         )
                           )
DESMOND RORERIC,           )
                           )
    Defendant.             )
_____)

**GOVERNMENT'S RESPONSE TO THE STANDING DISCOVERY ORDER**

The United States hereby files this response to the Standing Discovery Order. This response also complies with Local Rule 88.10 and Federal Rule of Criminal Procedure 16, and is numbered to correspond with Local Rule 88.10.

A.  1.  The government is unaware of any written or recorded statements made by the defendant.

    2.  That portion of the written record containing the substance of any oral statement made by the defendant before or after arrest in response to interrogation by any person then known to the defendant to be a government agent is attached.

    3.  No defendant testified before the Grand Jury.



4.  The NCIC record of the defendant, if any exists, will be made available upon receipt by this office.

5.  Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained or belonging to the defendant may be inspected at a mutually convenient time at the Office of the United States Attorney, 500 East Broward Boulevard, Seventh Floor, Fort Lauderdale, Florida. Please call the undersigned to set up a date and time that is convenient to both parties.

    The attachments to this discovery response are not necessarily copies of all the books, papers, documents, etc., that the government may intend to introduce at trial.

6.  A laboratory analysis of the substance seized in connection with this case is attached.

B.  **DEMAND FOR RECIPROCAL DISCOVERY**: The United States requests the disclosure and production of materials enumerated as items 1, 2 and 3 of Section B of the Standing Discovery Order. This request is also made pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.

C.  The government will disclose any information or material which may be favorable on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

D.  The government will disclose any payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses, within the scope of Giglio v. United States, 405 U.S. 150 (1972), or Napue v. Illinois, 360 U.S. 264 (1959).

E.  The government will disclose any prior convictions of any alleged co-conspirator, accomplice or informant who will testify for the government at trial.

2

F. No defendant was identified in a lineup, show up, photo spread or similar identification proceedings.

G. The government has advised its agents and officers involved in this case to preserve all rough notes.

H. The government will timely advise the defendant of its intent, if any, to introduce during its case in chief proof of evidence pursuant to F.R.E. 404(b). You are hereby on notice that all evidence made available to you for inspection, as well as all statements disclosed herein or in any future discovery letter, may be offered in the trial of this cause, under F.R.E. 404(b) or otherwise (including the inextricably-intertwined doctrine).

I. The defendant is not an aggrieved person, as defined in Title 18, United States Code, Section 2510(11), of any electronic surveillance.

J. The government has ordered transcribed the Grand Jury testimony of all witnesses who will testify for the government at the trial of this cause.

K. The government will, upon defense request, deliver to any laboratory presently registered with the Attorney General in compliance with 21 U.S.C. § 822 and § 823 and 21 C.F.R. 1301.13, a sufficient representative sample of any alleged contraband which is the subject of this indictment to allow independent chemical analysis of such sample.

If there is no response within ten (10) days from the date of the Certificate of Service attached hereto, the bulk of the contraband/narcotics will be destroyed. As usual, random samples will be set aside to be used as evidence at trial.

L. The government does not know of any automobile, vessel, or aircraft allegedly used in the commission of this offense that is in the government's possession.

M. The government is not aware of any latent fingerprints or palm prints which have been identified by a government expert as those of the defendant.

3

N.  To date, the government has not received a request for disclosure of the subject-matter of expert testimony that the government reasonably expects to offer at trial.

O.  The government will make every possible effort in good faith to stipulate to all facts or points of law the truth and existence of which is not contested and the early resolution of which will expedite trial. These stipulations will be discussed at the discovery conference.

The government hereby requests that the defense stipulate to the following facts:

1.  416.6 grams of 43% pure cocaine were seized from the defendant at the time of arrest in this case. Government Exhibit 1 is the 416.6 grams of cocaine which were seized from the defendant at the time of his arrest.

P.  At the discovery conference to be scheduled in Section A.5, above, the government will seek written stipulations to agreed facts in this case, to be signed by the defendant and defense counsel.

The government is aware of its continuing duty to disclose such newly discovered additional information required by the Standing Discovery Order, Rule 16(c) of the Federal Rules of Criminal Procedure, Brady, Giglio, Napue, and the obligation to assure a fair trial.

In addition to the request made above by the government pursuant to both Section B of the Standing Discovery Order and Rule 16(b) of the Federal Rules of Criminal Procedure, in accordance with Rule 12.1 of the Federal Rules of Criminal Procedure, the government hereby demands Notice of Alibi defense; the approximate time, date, and place of the offense was:

Time:   5:30 p.m.
Date:   April 12, 2000
Place:  Fort Lauderdale International Airport

4

The attachments to this response are numbered pages 00001-00008. Please contact the undersigned Assistant United States Attorney if any pages are missing.

        Respectfully submitted,

        THOMAS E. SCOTT
        UNITED STATES ATTORNEY

By: *[signature]*
        KATHLEEN RICE
        Assistant United States Attorney
        Florida Bar No. 100765
        500 East Broward Blvd., 7th Floor
        Fort Lauderdale, FL 33394
        Tel: (954) 356-7255, ext. 3512
        Fax: (954) 356-7336

cc: Special Agent Noble Harrison, DEA

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail this 16th day of May, 2000, to: Samuel Smargon, Assistant Federal Public Defender, 101 N.E. 3rd Avenue, Suite 202, Fort Lauderdale, Florida 33301.

_____
KATHLEEN RICE
Assistant United States Attorney

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | | | Page 1 of 7 |
|---|---|---|---|
| 1. Program Code<br>SUMMARY REPORT | 2. Cross File ☐☐☐☐ | Related Files | 3. File No.<br>▇▇▇▇▇▇▇▇ | 4. G-DEP Identifier<br>UCC1D |
| 5. By: SA Noble Harrison<br>At: Fort Lauderdale DO<br>Group 1 | | | 6. File Title<br>RORERIC, Desmond |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: N/A | | | 8. Date Prepared<br>04/26/00 |
| 9. Other Officers: SEE WITNESSES SECTION | | | |
| 10. Report Re: Arrest of Desmond RORERIC and Aquisition of Exhibits 1, N-1 and N-2 on 04/12/00. | | | |

**DEFENDANTS**

NAME:        RORERIC, Desmond
PDOB:        Montego Bay, Jamaica; 03/09/74
ADDRESS:     5940 Silver Star Road, Orlando, Florida  32808
OCCUPATION:  UNEMPLOYED

**JUDICIAL DISTRICT**

Southern District of Florida

**VIOLATIONS**

Title 21 USC 841(a)(1) and 846

**DATE/TIME/PLACE**

On April 24, 2000, at approximately 5:30PM, at the Fort Lauderdale/Hollywood International Airport.

**EXHIBITS**

Exhibit 1: Exhibit 1 is 492.5 gross grams of suspected cocaine

On April 12, 2000, Exhibit 1 was seized by DIU Detectives Robert Wolfkill and James Wheatley from Desmond RORERIC, at the Fort Lauderdale/Hollywood

| 11. Distribution:<br>Division MFD: DIG1<br>District GC, GB<br>Other HQS: NPS, NPSD | 12. Signature (Agent)<br>SA Noble Harrison<br>14. Approved (Name and Title)<br>Bruce E. Baldwin<br>Group Supervisor | 13. Date<br>05/15/2000<br>15. Date<br>05/15/2000 |
|---|---|---|

DEA Form  - 6
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

NH-2000may15;beb
4 - Extra

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

00001

U.S. Department of Justice
Drug Enforcement Administration

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. | 2. G-DEP Identifier UCC1D |
| | 3. File Title RORERIC, Desmond | |
| 4. Page 2 of 7 | | |
| 5. Program Code SUMMARY REPORT | 6. Date Prepared 04/26/00 | |

International Airport. Exhibit 1 was relinquished to SA'S Noble Harrison and Robert Shinn by Detective Wolfkill on 04/12/00. SA'S Harrison and Shinn maintained custody of, processed, and secured Exhibit 1 into evidence at the Fort Lauderdale D.O. on 04/12/00. Exhibit 1 was subsequently transported by SA'S Shinn and Doug McElwain to the DEA Southeast Laboratory for analysis on 04/12/00.

Exhibit N-1, is one pair of tan colored, mens leather boots.

Exhibit N-1, was seized by DIU Detectives Robert Wolfkill and James Wheatley, from Desmond RORERIC, at the Fort Lauderdale/Hollywood International Airport on 04/12/00. Exhibit N-1 was relinquished to SA'S Noble Harrison and Robert Shinn by Detective Wolfkill on 04/12/00. SA'S Harrison and Shinn maintained custody of, processed, and secured Exhibit N-1 into evidence at the Fort Lauderdale D.O. on 04/12/00.

Exhibit N-2, is assorted airline tickets and ticket jackets.

Exhibit N-2, was seized by DIU Detectives Robert Wolfkill and James Wheatley, From Desmond RORERIC, at the Fort Lauderdale/Hollywood International Airport on 04/12/00. Exhibit N-2 was relinquished to SA'S Noble Harrison and Robert Shinn by Detective Wolfkill on 04/12/00. SA'S Harrison and Shinn maintained custody of, processed, and secured Exhibit N-2 into evidence at the Fort Lauderdale D.O. on 04/12/00.

**WITNESSES**

Domestic Interdiction Unit:

Sgt. Mick Weiner
Detective Eric Pulskamp
Detective Robert Wolfkill
K-9 Detective James Wheatley
K-9 Detective Joe Genna

**DETAILS**

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

00002

**4 - Extra**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | | UCC1D |
| | 3. File Title | |
| | RORERIC, Desmond | |
| 4. Page 3 of 7 | | |
| 5. Program Code | 6. Date Prepared | |
| SUMMARY REPORT | 04/26/00 | |

1. On Wednesday, April 12, 2000, Detective's Robert Wolfkill, Eric Pulskamp, and K-9 Detective James Wheatley and his K-9 Officer "Quorola", of the Broward County Drug Interdiction Unit (DIU), were working in concourse E of the Fort Lauderdale/Hollywood International Airport. Detective Wheatley was utilizing his narcotic detection K-9, Officer Quorola, by walking her along a row of seats. While doing this, Detectives Wheatley, Pulskamp, and Wolfkill noticed a person quickly get up and walk away from the area at a rapid pace, while looking at Detectives Wheatley, Pulskamp, and Wolfkill. Based on their experience, Detectives Wheatley, Pulskamp, and Wolfkill observed this as a suspicious action in that the individual was attempting to avoid the K-9.

2. Detectives Pulskamp and Wolfkill then approached the person, subsequently identified as Desmond RORERIC, from his right side. Detectives Pulskamp and Wolfkill then engaged in a consensual encounter with RORERIC. Detectives Pulskamp and Wolfkill both identified themselves as police officers and displayed their photo identification. These Detectives explained their duties with the DIU and asked RORERIC if they could speak with him. RORERIC responded "sure" and placed his bag on a seat next to him. During this time, Officer Quorola alerted to the seat area where RORERIC had been sitting and then alerted to RORERIC'S person and bag. Detective's Pulskamp and Wolfkill observed that RORERIC was breathing heavily and was sweating profusely, despite the cool temperature of the terminal. Detective's Pulskamp and Wolfkill further noted RORERIC'S stomach to be moving up and down at a rapid pace.

3. Detective Wolfkill then told RORERIC that the narcotics detection K-9 had alerted to his bag and person, and asked RORERIC if he knew why the K-9 would be alerting to his bag and person. RORERIC replied that he did not know why the dog had alerted to him. Detective Wolfkill then asked RORERIC if he was transporting any illicit narcotics. RORERIC replied that he was not. Detective Wolfkill then asked RORERIC'S permission to search his bag and person and RORERIC responded yes. Detective Wolfkill searched RORERIC'S bag with negative results. Detective Wolfkill then asked RORERIC if he would accompany the Detectives to the entrance of the mens restroom,

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

*This report is the property of the Drug Enforcement Administration.*
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

4 - Extra

00003

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title RORERIC, Desmond | UCC1D |

4.
Page 4 of 7

| 5. Program Code SUMMARY REPORT | 6. Date Prepared 04/26/00 |
|---|---|

approximately twenty yards away, for a more private patdown search. RORERIC responded yes and accompanied Detectives to this area.

4. Once in the restroom area, Detective Wolfkill conducted a pat down search of RORERIC. At this time, Detective Wolfkill discovered a rubber banded bundle of U.S. Currency totaling $960.00 dollars, in RORERIC'S right front pants pocket. This currency was subsequently seized and maintained by DIU Detectives for state forfeiture. Detective Wolfkill then asked RORERIC to remove his shoes, which RORERIC did. Upon removing the shoes, Exhibit N-1, Detective Wolfkill observed a tan taped package in each shoe, Exhibit 1, where the insoles should be located. Detective Wolfkill found that these strips contained suspected cocaine. The suspected cocaine was subsequently field tested by Sgt. Mick Weiner at the DIU office and yielded a positive result for the presence of cocaine.

5. Detective's Pulskamp and Wolfkill then placed RORERIC under arrest and escorted him to DIU office. Once at the DIU office, K-9 Detective Joe Genna and his K-9 Officer "Freebie", conducted a sniff line-up of the seized suspect currency. At that time, Officer Freebie indicated a positive alert for the presence of a narcotic odor emanating from the suspect currency. This currency was seized by DIU Detectives for state forfeiture proceedings.

6. Detective Wolfkill then read RORERIC his rights under Miranda, which RORERIC agreed to waive. Sgt. Mick Weiner summoned SA'S Noble Harrison and Robert Shinn to the DIU office to further conduct the investigation. Upon arrival at the DIU office, SA'S Harrison and Shinn spoke with RORERIC who gave the following statements, in summary, regarding his drug trafficking activities: RORERIC stated that he was a drug courier for a male known to him only as Tony LNU, who is a multi-kilogram cocaine dealer living in Miami, Florida. RORERIC stated that he made two previous trips transporting cocaine for Tony LNU. This current trip, in which he was arrested, was to be his third trip. RORERIC stated that he was introduced to Tony LNU by an acquaintance known to RORERIC only as Devon LNU, in or about February of 2000. RORERIC stated that Devon LNU is also a drug courier for Tony LNU.

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

4 - Extra

*This report is the property of the Drug Enforcement Administration.*
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

00004

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | | UCC1D |
| | 3. File Title RORERIC, Desmond | |

| 4. Page 5 of 7 | | |
|---|---|---|
| 5 Program Code SUMMARY REPORT | 6. Date Prepared 04/26/00 | |

7. RORERIC stated that Tony LNU asked him at their initial meeting, if RORERIC was interested in doing any "work", meaning to transport drugs. RORERIC stated that he told Tony LNU yes, that he was interested. RORERIC stated that Tony LNU told him that he would pay RORERIC $1,500 dollars per trip. RORERIC stated that he told Tony LNU that he was ready to start the work any time. RORERIC stated that Tony LNU gave him his, Tony LNU'S, cellular telephone number, 305-285-2885. RORERIC further stated that he gave his pager number, 888-853-4061, to Tony LNU. RORERIC stated that Tony LNY told him that he would call him soon.

8. RORERIC stated that approximately one week later, Tony LNU paged him and he returned the page. RORERIC stated that he told Tony LNU that he was ready for a trip. RORERIC stated that Tony LNU told him that he, TONY LNU, would travel to Orlando, Florida, where RORERIC resides, the following weekend to meet with him. RORERIC stated that he told Tony LNU to page him when he got into town. RORERIC stated that a few days later, he met Tony LNU at a Holiday Inn hotel near the airport, in Orlando. RORERIC stated that he entered Tony LNU'S hotel room, where Tony LNU provided him with a pair of tennis shoes and $1,000 dollars cash. RORERIC stated that Tony LNU told him that there was cocaine concealed within the tennis shoes. RORERIC stated that Tony LNU then told him that he was to fly from Orlando to Baltimore, Maryland, where he would be met by a female driving a black colored Q45 Infinity. RORERIC stated that Tony LNU further told him that the female would drive him to the apartment in Baltimore, of a male known only to RORERIC as Mike LNU. RORERIC stated that Tony LNU told him that at that time, RORERIC would give Mike LNU the cocaine and Mike LNU would then provide RORERIC with $500 dollars cash as well as an additional $200 dollars cash for the purchase of a one way, return trip, ticket. RORERIC stated that Tony LNU then drove him to the Orlando airport, where Tony LNU gave him cash for the purchase of a one way ticket to Baltimore. RORERIC stated that he flew to Baltimore and followed the procedure exactly as Tony LNU had previously described.

DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

4 - Extra

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

00005

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION *(Continuation)* | 1. File No. | 2. G-DEP Identifier UCC1D |
|---|---|---|
| | 3. File Title RORERIC, Desmond | |

| 4. Page 6 of 7 | | |
|---|---|---|
| 5 Program Code SUMMARY REPORT | 6. Date Prepared 04/26/00 | |

9. RORERIC stated that upon arrival in Baltimore, he was met by the female in the Infinity, who identified herself to RORERIC as Shanika LNU. RORERIC stated that Shanika LNU stated that she was Mike LNU'S girlfriend. RORERIC then stated that Shanika LNU then drove him to Mike LNU'S apartment. RORERIC stated that he and Shinika LNU went upstairs into the apartment, where they were met by Mike LNU. RORERIC stated that he gave Mike LNU the cocaine and Mike LNU gave him $500 dollars cash. RORERIC stated that Mike LNU also gave him an additional $200 dollars cash for the purchase of a one way return plane ticket. RORERIC stated that he then called a female friend of his, Neisha Brown, at telephone number 410-812-5865, from Mike LNU's apartment. RORERIC stated that Brown picked him up at Mike LNU'S apartment and that he stayed with Brown for a couple of days and then returned to Orlando.

10. RORERIC stated that approximately three weeks later, Tony LNU again contacted him and traveled to Orlando to provide RORERIC with cocaine for another trip. RORERIC stated that he again met Tony LNU at the same Holiday Inn, where Tony LNU taped a large quantity of cocaine to ROREICS back and legs. RORERIC stated that Tony LNU then provided him with $1,500 dollars cash. RORERIC stated that Tony LNU then drove him to the airport and gave him an additional $200 dollars cash for the purchase of a one way ticket to Baltimore. RORERIC stated that he was again picked up by Shanika LNU and driven to Mike LNU's apartment. RORERIC stated that once at the apartment, Shanika LNU helped him to remove the taped cocaine from his back and legs. RORERIC stated that he then met Mike LNU, who provided him another $500 dollars cash as well as $200 additional dollars for the purchase of the one way, return trip ticket. RORERIC stated that he again called Neisha Brown who picket him up at Mike LNU's apartment. RORERIC stated that he again stayed with Brown for a couple of days and then returned this time to Fort Lauderdale, Florida on April 10, 2000.

11. RORERIC stated that another female friend of his, known to RORERIC only as Tonya LNU, picked him up at the Fort Lauderdale airport. RORERIC stated that he stayed with Tonya LNU over night. RORERIC stated that the following morning Tonya LNU drove him to a car wash in Miami, where he was to meet with Tony LNU. RORERIC stated that he met

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

4 - Extra

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

00006

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | | UCC1D |
| | 3. File Title RORERIC, Desmond | |
| 4. Page 7 of 7 | | |
| 5. Program Code SUMMARY REPORT | 6. Date Prepared 04/26/00 | |

Tony LNU, who was driving a black colored Lexus LS 400, at the car wash. RORERIC stated that Tony LNU then drove RORERIC to a house located somewhere in Miami, where RORERIC dropped off his bag. RORERIC stated that he and Tony LNU then drove around town in the Lexus and smoked marijuana. RORERIC stated that Tony LNU then dropped him back off at the previously mentioned house for the night.

12. RORERIC stated that the following morning, Tony LNU returned to the house driving a Ford Windstar van. RORERIC stated that Tony LNU at that time provided him with boots containing cocaine, Exhibit N-1, and $1,000 dollars cash. Tony LNU also gave RORERIC and additional $200 dollars cash for the purchase of a one way ticket to Baltimore. RORERIC stated that he, Tony LNU, and several of Tony LNU'S friends, went to an International House of Pancakes restaurant for breakfast. RORERIC stated that during this time, Tony LNU was discussing with his friends the fact that he wanted to send the last of the kilograms of cocaine that he received to Baltimore. RORERIC stated that Tony LNU then drove him to the Fort Lauderdale airport to board the flight to Baltimore, where he was arrested. RORERIC made no further statements and the interview was terminated at that time.

13. SA'S Harrison and Shinn took custody of and transported RORERIC to the Fort Lauderdale city jail, where he was lodged overnight pending remand to the U.S. Marshals service.

**INDEXING**

1. RORERIC, Desmond- NADDIS: Negative
DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

4 - Extra

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

00007

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

# REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

FILE

| 1. HOW OBTAINED (Check) | | | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|
| ☐ Purchase  ☒ Seizure  ☐ Free Sample | | | | |
| ☐ Lab Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal) | | | N/A | UCC1D |
| ☐ Internal Body Carry  ☐ Other (Specify) N/A | | | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Fort Lauderdale, Florida, USA | 04/12/00 | RORERIC, Desmond |

| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|---|
| N/A | ☐ Case No. OR ☐ Seizure No.  No. N/A | 04/13/00 | 1 |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 1 | N/A | COCAINE | TWO FLAT STRIPS OF SUSPECTED COCAINE, WRAPED WITH BROWN COLORED PACKING TAPE. | 492.5gg | 492.5gg | N/A |
| | | | PLEASE "RUSH" | | | |
| | | | (954) 485-1893 | | | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG? ☒ NO (included above)  ☐ YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:
On 04/12/00, Exhibit 1 was seized by the Broward County Domestic Interdiction Unit from Desmond RORERIC, at the Fort Lauderdale/Hollywood International Airport. On 04/12/00, DIU Detective XXX relinquished custody of Exhibit 1 to SA'S Noble Harrison and Robert Shinn, who transported, processed, and secured Exhibit 1 into evidence at the Fort Lauderdale District Office on 04/12/00. Exhibit 1 was subsequently transported to the DEA South East Regional Laboratory for analysis.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| SA Robert Shinn | Bruce E. Baldwin, Group Supervisor  4/19/00 |

## LABORATORY EVIDENCE RECEIPT REPORT

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| HSE | 4/20/00 | Robert Shinn, Special Agent |
| 22. SEAL  ☐ Broken  ☒ Unbroken | 23. RECEIVED BY (Signature & Date)  4/20/2000 | 24. Print or Type NAME and TITLE |

## LABORATORY REPORT

25. ANALYSIS SUMMARY AND REMARKS
Exhibit 1 contains cocaine hydrochloride and caffeine.

Gross Wt: 491.8g     Net Wt: 416.6g

112737

amp 4/28/00

| 26. Exhibit No | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 1 | 112737 | cocaine hydrochloride | 43 | % | | 179.1g | 414.6g |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| Eric Jordan  5/3/2000 | Forensic Chemist | 4/26/00 |
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
| William  5/3/2000 | Laboratory Director | Miami, FL |

DEA Form - 7 (Sept. 1995)     Previous edition dated 4/90 may be used until stock is exhausted

00008

secution